

RECEIVED
FEB - 5 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | ~~CR. NO. 05-394 (RBW)~~ |
| ) | MISC. 07-50 (RBW) |
| I. LEWIS LIBBY, ) | |
|   also known as "Scooter Libby," ) | Oral Argument Requested |
|   Defendant. ) | |

## I. LEWIS LIBBY'S OPPOSITION TO DAVID E. SANGER'S MOTION TO QUASH THE RULE 17(a) SUBPOENA

Mr. Sanger seeks to quash the subpoena issued to him pursuant to Federal Rule of Criminal Procedure 17(a) on the grounds that the subpoena is unnecessarily intrusive under the reporters' privilege and seeks testimony that is not material. In light of this Court's prior rulings and an accused's right under the Sixth Amendment to present a defense, Mr. Sanger's motion should be denied.

### ARGUMENT

One who seeks to quash a subpoena for testimony bears a heavy burden. *See, e.g., Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995) ("The party seeking to quash a subpoena bears a heavy burden of proof."); *see generally* Fed. R. Crim. P. 17, advisory committee notes (1944) (noting that Fed. R. Civ. P. 45 and Fed. R. Crim. P. 17 are "substantially the same"). Where, as here, a criminal defendant's Sixth Amendment right to compulsory process is implicated, a court should be especially reluctant to quash a subpoena, and should do so only where a movant clearly demonstrates that circumstances render a subpoena unreasonable

or oppressive. *See Washington v. Clemmer*, 339 F.2d 725, 727 (D.C. Cir. 1964) (acknowledging that a Rule 17 testimony subpoena can be quashed only if it is "unreasonable or oppressive"). Mr. Sanger has failed to meet this burden.

    A.    <u>The Reporters' Privilege Is Not At Issue</u>

The very existence of a reporters' privilege in this Circuit, after the extensive litigation involving the issue in this case, is dubious at best. Even if such a privilege did exist, however, Mr. Sanger's reliance on it here is misplaced. Mr. Libby does not seek information about Mr. Sanger's sources, his notes, or information about any editorial decision making. Rather, Mr. Libby seeks to exercise his constitutional right to compel testimony about a conversation *he* had with Mr. Sanger. Such testimony would not be protected by any qualified reporters' privilege, even under the cases cited by Mr. Sanger.

This Court decided, "after carefully reviewing all of the currently existing authority...that, in this case, the news reporters and news organizations do not possess a First Amendment reporters' privilege." *United States* v. *Libby*, 432 F.Supp. 2d 26, 46 (D.D.C. 2006). Thus, Mr. Sanger cannot reasonably argue that he holds any privilege with respect to his conversation with Mr. Libby, and no balancing of interests is required. In the circumstances presented here, Mr. Sanger comes before the Court with the same rights and responsibilities of any citizen. *See id.* at 47 (citing *Branzburg v. Hayes*, 408 U.S. 665, 690-91 (1972)). Indeed, the Court recognized that reporters may not "invoke the First Amendment to stonewall a criminal defendant who has been indicted by [a] grand jury and seeks evidence to establish his innocence." *Id.* That is precisely what is at issue here.

Even if the Court were to conclude that a balancing of interests was appropriate, Mr. Libby's need for the testimony to defend himself against criminal charges undeniably

outweighs Mr. Sanger's generalized interest in confidentiality. *See United States v. Nixon*, 418 U.S. 683, 713 (1974) ("[W]hen the ground for asserting privilege as to subpoenaed materials sought for use in a criminal trial is based only on the generalized interest in confidentiality," the privilege "must yield to the demonstrated, specific need for evidence in a pending criminal trial").

Contrary to Mr. Sanger's arguments, *United States v. Ahn*, 231 F.3d 26 (D.C. Cir. 2000) and *United States v. Hubbard*, 493 F. Supp. 202 (D.D.C. 1979) do not hold otherwise. In both cases, the defendants sought reporters' testimony about their sources and research for use in ancillary proceedings – not in support of the presentation of the defendant's case in chief. In *Ahn*, the defendant sought reporters' testimony about their sources in a proceeding to withdraw his guilty plea, claiming that the government breached its plea agreement by leaking information about his case to reporters. *See Ahn*, 231 F.3d at 36-37. Similarly, in *Hubbard*, the question was whether a reporter should be required to turn over evidence related to a defendant's motion to suppress, and the court concluded that the evidence sought was "hearsay," "merely cumulative," and "less than the best evidence available." *Hubbard*, 493 F. Supp. at 205. The same is not true here. As described more fully below, Mr. Sanger's testimony is both relevant and admissible in this case.

    B.  **Mr. Libby's Constitutional Right to Present a Defense <u>Outweighs Any Interest Mr. Sanger May Have in Avoiding Testifying</u>**

The defendant's right to call witnesses of his choosing is a cornerstone of criminal procedure under the Sixth Amendment to the Constitution. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("the right to compel the presence and present the testimony of witnesses provides the defendant with a sword that may be employed to rebut the prosecution's case, [and the] decision whether to employ it in a particular case rests solely with the defendant."); *United States*

3

v. *Seeger*, 180 F. Supp. 467, 468 (S.D.N.Y. 1960) (A criminal defendant has the right to compel the attendance of witnesses, and "who these witnesses shall be is [a] matter for the defendant and his counsel to decide," not the person under subpoena.); *see also, United States* v. *Davis*, 974 F.2d 182, 186 (D.C. Cir. 1992) ("[T]he Sixth Amendment guarantees the right to call witnesses 'material and favorable to [the] defense.'"). Similarly, this Court has recognized that "a criminal defendant's right to the production and presentation of evidence during a criminal trial" is rooted in our history and the Constitution. *Libby*, 432 F.Supp.2d at 47. It is for the defense to decide the most effective manner in which to present its case, and Mr. Sanger's efforts to direct that presentation should be rejected.

      C.     <u>Mr. Sanger's Testimony Is Both Relevant and Admissible</u>

The testimony sought from Mr. Sanger is critical to the defense. It constitutes evidence of Mr. Libby's state of mind during the relevant time period, and helps rebut evidence that Mr. Libby discussed Mr. Wilson's wife with one of Mr. Sanger's then-colleagues, Judith Miller, on June 23.

The government has presented evidence from eight witnesses who claim that Mr. Libby discussed Mr. Wilson's wife with them between mid-June and mid-July 2003. The government has attempted to prove to the jury through this evidence that Mr. Libby was keenly focused on Mr. Wilson and his wife during the relevant time period – a fact that, if true, could lead the jury to conclude that it was less likely that Mr. Libby would have forgotten (as the defense has argued) the information by the time he spoke with Mr. Russert on July 10. Mr. Libby is entitled to counter the government's evidence on his terms, rather than on terms Mr. Sanger would set, and offer testimony from witnesses to show that in fact Mr. Libby was not as focused on Mr. Wilson or, more importantly, his wife as the government has suggested. Evidence that Mr. Libby met with Mr. Sanger to discuss support for the Administration's

4

position regarding Iraq's WMD capabilities, but did not mention Mr. Wilson's wife is plainly relevant to this defense. Moreover, Mr. Sanger's testimony would tend to negate any suggestion that Mr. Libby was somehow pushing a story about Mr. Wilson's wife in the weeks before the Novak article, as certain news articles the government seeks to introduce suggest. *See e.g.* Walter Pincus and Mike Allen, *FBI Agents Tracing Linkage of Envoy To CIA Operative*, WASHINGTON POST, Oct. 12, 2004, GX422.

Mr. Sanger contends that because Mr. Libby had the opportunity to explore with Cathie Martin the subject on which he plans to examine Mr. Sanger, and the right to recall Ms. Martin, the Court should quash the subpoena. This argument misses the mark for two reasons. First, simply because Ms. Martin might be able to provide similar testimony to Mr. Sanger does not render Mr. Sanger's testimony unnecessary. Mr. Sanger's testimony differs from Ms. Martin's in that he is a neutral witness who the jury would not view as either pro-government or pro-defense. The jury ought to hear what *he* remembers about his conversation with Mr. Libby, not what Ms. Martin may or may not have heard or what Mr. Libby himself claims to have said. In fact, Ms. Martin's testimony about a note in which she wrote "leak to Sanger" makes the need for Mr. Sanger's testimony all the more significant. *See* Trial Tr. Jan. 25 (PM) at 15:4-20. Although Ms. Martin explained that her note meant that someone from the Administration should sit down with Mr. Sanger to provide the Administration's side of the sixteen words story, the suggestion of a leak to Mr. Sanger is nonetheless potentially damaging to Mr. Libby's case. Mr. Libby has a right to elicit testimony that Mr. Sanger did not in fact receive a leak about Mr. Wilson's wife, and dispel any such suggestion from the juror's minds.

Similarly, the fact that the defense has elicited testimony from Ms. Martin that she did not hear Mr. Libby mention Mr. Wilson's wife in his conversations on July 12 does not

render Mr. Sanger's testimony cumulative. Mr. Sanger's testimony is also needed for a different point. Ms. Miller testified that she spoke to Mr. Libby about Mr. Wilson's wife on June 23, as well as July 8. The defense may contend that Ms. Miller is mistaken about this. Evidence that Mr. Libby spoke to another reporter about similar topics a week after his conversation with Ms. Miller, but made no mention of Mr. Wilson's wife, would bolster this argument.

Second, Mr. Sanger's arguments involving the testimony of Ms. Martin suggest that the Court should treat him differently than other citizens and engage in a balancing test. The Court need not perform such a balancing test here because the reporters' privilege does not apply. But, were the Court to do so, the defense respectfully submits that Mr. Sanger – not a party here – should not be allowed to dictate the manner and means of Mr. Libby's defense. More specifically, Mr. Libby cannot be required to use a witness for the government to make a point relevant to his defense. On cross-examination, the defense challenged Ms. Martin's credibility and cannot reasonably be expected to now call her as a defense witness to offer testimony on its behalf.

There can be no doubt that Mr. Sanger's testimony is relevant to Mr. Libby's defense. Mr. Sanger's efforts to rely upon a reporters' privilege and hamper Mr. Libby's right to present his defense should be rejected.

## CONCLUSION

For the reasons set forth above, Mr. Sanger's Motion to Quash should be denied.

Dated: February 3, 2007

Respectfully submitted,

_____
Theodore V. Wells, Jr.
(DC Bar No. 468934)
James L. Brochin
(DC Bar No. 455456)
Paul, Weiss, Rifkind, Wharton
 & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3089
Fax: (212) 373-2217

_____
William H. Jeffress, Jr.
(DC Bar No. 041152)
Alex J. Bourelly
(DC Bar No. 441422)
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 639-7751
Fax: (202) 585-1087

_____
John D. Cline
(D.C. Bar No. 403824)
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104
Tel: (415) 626-3939
Fax: (415) 875-5700

## CERTIFICATE OF SERVICE

I, Elizabeth M. Eaton, certify that on the 3rd day of February, 2007, I caused a true and correct copy of I. Lewis Libby's Opposition to David E. Sanger's Motion to Quash the Rule 17(a) Subpoena to be served by email upon the following:

Charles S. Leeper
Justin O'Neill Kay
Drinker Biddle & Reath LLP
1500 K St, N.W. Suite 1100
Washington DC, 20005-1209

Charles.Leeper@dbr.com
Justin.Kay@dbr.com

*Elizabeth M. Eaton*
Elizabeth M. Eaton